| | |
|---|---|
| **DISTRICT COURT, DENVER COUNTY, STATE OF COLORADO**<br>1437 Bannock Street, Room 256<br>Denver, Colorado 80202<br>(720) 865-8301 | DATE FILED: March 17, 2017 6:18 PM<br>FILING ID: C82B538ABAAB8<br>CASE NUMBER: 2017CV31027 |
| **ROYAL CREST DAIRY, INC.**<br><br>**Plaintiffs,**<br><br>v.<br><br>**CONTINENTAL WESTERN INSURANCE COMPANY,**<br>a corporation.<br><br>**Defendant.** | ▢ **COURT USE ONLY** ▢ |
| **Attorneys for Plaintiff:**<br><br>JoAnne M. Zboyan, Esq., #14372<br>SPRINGER AND STEINBERG, P.C.<br>1600 Broadway, Suite 1200<br>Denver, Colorado 80202<br>Telephone: (303) 861-2800<br>Facsimile: (303) 832-7116<br>E-mail:<br>jzboyan@springersteinberg.com<br><br>Christopher N. Mammel, Esq., #10980<br>MERLIN LAW GROUP, P.A.<br>999 18th St., Ste. 3000<br>Denver, CO 80202<br>Telephone: (303) 357-2374<br>Facsimile: (303) 357-2377<br>Email:<br>cmammel@merlinlawgroup.com | Case Number:<br><br>Div.:     Ctrm.: |
| **COMPLAINT FOR DECLARATORY RELIEF** | |

Plaintiff, Royal Crest Dairy, Inc. ("Royal Crest"), by its undersigned attorneys, for its Complaint for Declaratory Relief against Continental Western Insurance Company ("CWIC"), alleges, avers and states as follows:

**EXHIBIT A**

## NATURE OF THE ACTION

1. Plaintiff brings this action for declaratory relief regarding interpretation of the appraisal provision set forth in the insurance policy issued by CWIC, specifically regarding whether CWIC is entitled to impose unwritten standards of qualifications that apply to the insured's selection of an appraiser to represent it.

## PARTIES

2. Plaintiff Royal Crest is the owner of commercial property located at 350, 345, 388-394 and 310-324 S. Pearl Street, Denver, CO 80209 (the "Property").

3. Upon information and belief, Defendant, CWIC, is a corporate insurance company licensed with the State of Colorado and engaged in the business of issuing property and casualty insurance policies insuring commercial and other properties in the state of Colorado.

## JURISDICTION and VENUE

4. This Court has subject matter and personal jurisdiction over the parties to this cause of action.

5. A cause of action exists under Colorado state law for claims regarding the conduct complained of herein.

6. Jurisdiction is proper as to CWIC pursuant to C.R.S. § 13-1-124(1)(a), (b), and (d), and C.R.S. §§ 13-52-101 et seq. and C.R.C.P. 57 because CWIC conducted the business at issue in this action within the State of Colorado.

7. Venue is proper pursuant to Colo.R.Civ.P. 98 because it is the venue in which the cause of action accrued and where the insured property in question is located.

## GENERAL ALLEGATIONS

8. CWIC issued Royal Crest a commercial business insurance policy, Policy Number CPA-3003502-24 ("the Policy") to cover the Property. A certified copy of the applicable Policy is attached hereto as Ex. "A."

9. The Policy was in full force and effect from December 1, 2014, to December 1, 2015.

10. Pursuant to its Policy, CWIC agreed to pay for direct physical loss of or damage to the insured premises as a result of perils including wind and hail.

11. Royal Crest paid the premiums due on the Policy in a timely manner, and

**EXHIBIT A**

performed all duties and responsibilities under the Policy.

12. On or about June 24, 2015, while the Policy was in full force and effect, the insured premises sustained significant damage from a localized hailstorm.

13. Royal Crest timely provided notice of loss to CWIC for benefits under the Policy, seeking costs to restore or replace the damage. CWIC acknowledged notice of the claims, assigning claim number 40099833.

14. On or about August 18, 2015 the licensed Colorado public adjustor assisting Royal Crest with its loss requested information from CWIC, including underwriting and loss control information regarding the property.

15. CWIC refused to provide any of its underwriting information. Royal Crest requested certificates of insurance for the roofing company CWIC indicated it had retained to conduct destructive testing. CWIC refused to provide the requested certificates of insurance or any underwriting information, and retained a lawyer, Keven Amatuzio, Esq., to assist in its claim investigation and adjustment of the loss.

16. On October 1, 2015, CWIC acknowledged Notice of Claim, alerting Royal Crest that it was conducting its investigation under a reservation of rights and asserting that its investigation to date had revealed "there have been potential multiple hail events at your property location since our initial policy inception date of 12/01/2012. Additionally, events pre-policy inception have been noted which would fall within your prior Insurance Carrier's coverage dates."

17. In response to CWIC's assertions of pre-existing damage, on October 6, 2015, Royal Crest again requested all information CWIC had supporting its assertions, including weather and consultant reports, photos and underwriting investigation.

18. On October 13, 2015, CWIC refused Royal Crest's requests stating "underwriting and claims are separate functions, and thus we do not see that anything that might be contained in CWIC's underwriting file would be necessary to the insured's accurate completion of its proof of loss or the provision of other information that CWIC has requested…."

19. Royal Crest's repeated requests for underwriting, eye witness accounts, photos, videos and other documents to support CWIC's assertions of pre-existing damage were repeatedly refused by CWIC including on October 26, and November 20, 2015 and January 20 and March 14, 2016.

20. On November 6, 2015, Mr. Amatuzio undertook to adjust this loss by contacting Royal Crest and instructing it that "all future communications about this claim" were to be directed to him.

21. On December 3, 2015, Royal Crest hand-delivered its Sworn Statement in Proof

**EXHIBIT A**

    Of Loss ("Proof of Loss") of 1,091 pages showing covered losses and damages from the storm in the amount of $1,125,861.35.

22. On December 31, 2015, Mr. Amatuzio advised that allegedly based upon the advice of its consulting expert, (Billy Owens at CG3),, CWIC was issuing its check for assessed ACV damages in the amount of $76,371.37.

23. On January 8, 2016, Royal Crest asked for the data and information upon which CWIC based its rejection of Royal Crest's proof of loss and it assessment of damages, including another request for its underwriting information.

24. Mr. Amatuzio refused to provide the requested information, including the information supporting CWIC's assessment of damages and confirmation of the licensure of Black's Roofing Company, whom Western Continental had retained and utilized for its roofing/HVAC damage assessment.

25. Again, CWIC, through Mr. Amatuzio, declined to produce any information or confirm licensure status for Black's Roofing Company.

26. On April 15, 2016, Royal Crest provided forensic information/documentation (approximately 120 pages) including site specific forensic hail information for June 24, 2015, a critique of CWIC's hail damage assessment and support for its proof of loss and again requested CWIC to revise its improper determination of the amount of loss experienced by Royal Crest.

27. On or about April [sic], 2016, Mr. Amatuzio drafted a response for Doug Wilnet, CWIC's General Adjustor, regarding Royal Crest's position, claiming an impasse and invoking appraisal. This letter was not sent to Royal Crest.

28. CWIC retained Haag Engineering, an engineering group retained frequently by insurers as consultants, expert witnesses and appraisers, to re-evaluate the claim. Re-inspection by Haag was undertaken on June 2, 2016, however, hearing nothing from CWIC for nearly two months, Royal Crest wrote again on July 22, 2016, inquiring on the status of CWIC's re-evaluation of the claim.

29. Finally, on August 10, 2016, CWIC provided its engineering report. Attorney Amatuzio asserted on August 23, 2016 that based upon the Haag Engineering report, "no further benefits are due under the policy for the subject loss" and that it appeared from the report "in issuing its prior payment, [CWIC] probably overpaid," but that "CWIC, of course is not seeking any money back."

30. Royal Crest has fulfilled all other duties required of it under the Policy after discovery of the loss, and performed all conditions precedent and subsequent required under the insurance Policy, or alternatively, has been excused from performance by the acts, representations and/or conduct of CWIC.

**EXHIBIT A**

# FIRST CLAIM FOR RELIEF
## DECLARATORY RELIEF – APPRAISAL PROCESS

31. Royal Crest re-alleges paragraphs 1-30 as though fully set forth herein.

32. On or about November 8, 2016, Royal Crest submitted its demand for appraisal pursuant to the Policy.

33. Royal Crest and CWIC disagree as to the amount of loss sustained as a result of the acknowledged loss event.

34. The policy drafted by CWIC contains an appraisal provision providing an alternative dispute resolution process upon demand by either party in the event of a disagreement as to the amount of the loss:

> "2. **Appraisal**
>
> If "you" and "we" do not agree on the amount of the loss or the value of covered property, either party may demand that these amounts be determined by appraisal.
>
> If either makes a written demand for appraisal, each will select a competent, independent appraiser and notify the other of the appraiser's identity with 20 days of receipt of the written demand. The two appraisers will then select a competent, impartial umpire. If the two appraisers are unable to agree upon an umpire within 15 days, "you" or "we" can ask a judge or a court of record in the state where the property is located to select an umpire.
>
> The appraiser will then determine and state separately the amount of each loss.
>
> The appraisers will also determine the value of covered property items at the time of loss, if requested.
>
> If the appraisers submit a written report of any agreement to "us", the amount agreed upon will be the amount of the loss. If the appraisers fail to agree within a reasonable time, they will submit only their differences to the umpire. Written agreement so itemized and signed by any two of these three sets the amount of the loss.
>
> Each appraiser will be paid by the party selecting that appraiser. Other expenses of the appraisal and the compensation of the umpire will be paid equally by "you" and "us".
>
> *See* Exh. A, CWIC policy, Form CO 1000 10 02, p. 30 of 31.

**EXHIBIT A**

35. Pursuant to the Policy CWIC wrote and issued, it has a contractual obligation to proceed with the appraisal to determine the amount of Royal Crest's loss and the value of the covered property.Under the policy, Royal Crest is entitled to performance of the appraisal provision as an alternative dispute resolution means to determine the scope of the loss event (causation of damage) and the amount and value of the cost to repair or replace the damaged property.Royal Crest duly invoked appraisal on November 8, 2016, pursuant to CWIC's policy.  CWIC agreed with its insured that the hail storm had caused damage to roofing, HVAC, gutters, but disagreed as to the extent of such damages. On November 27,2016, Royal Crest named its appraiser. Mr. Amatuzio named CWIC's appraiser on November 28, 2016.

36. After agreeing to appraisal to determine the appropriate scope and amount of damages resulting from the hail/wind storm, which admittedly damaged Royal Crest's property, including appointment of its preferred appraiser, CWIC now improperly attempts to rewrite its Policy post-claim, specifically its appraisal provision, to delay, deter or prevent the appraisal process documented in its Policy as a post-claim remedy.

37. In correspondence dated November 30,, 2016, Mr. Amatuzio questioned whether the appraiser selected by Royal Crest to participate in the appraisal on its behalf was qualified under the language in the Policy, and demanded that Royal Crest name a different appraiser. *See* Exh. B hereto.

38. By correspondence dated December 8, 2016, Royal Crest's licensed public adjuster responded by clarifying that the authorities relied on by CWIC to assert disqualification of Royal Crest's appraiser were decided under both different policy language and a different legal standard than applied to  CWIC's policy. *See* Exh. C hereto.

39. In response, in correspondence dated January 3, 2017, CWIC continued to assert that certain legal decisions made under  policy language different from CWIC's and under standards no longer applicable to appraisal precluded Royal Crest's chosen appraiser from serving. *See* Exh. D hereto (without attachments).

40. An actual controversy exists between Royal Crest and CWIC regarding the interpretation and application of the Appraisal condition of the Policy which requires a declaration of rights between the Parties pursuant to C.R.C.P. 57.

41. CWIC's assertions misstate and misinterpret the Appraisal provision to require standards applicable to other legal proceedings but not the informal alternative resolution process (appraisal) CWIC created under its Policy.

**EXHIBIT A**

42. CWIC's interpretation of the language of the Policy to attempt to rewrite its Appraisal condition is not consistent with the express language of the Policy or Colorado law, and is an attempt to rewrite its Policy post claim and after a proper appraisal demand, without consideration.

43. The terms used in the Appraisal condition to state the qualifications of a party-appointed appraiser, "competent and independent," are not defined in the Policy. The common definition of "independent" is "not dependent; as not subject to control by others." *E.g.,* Merriam-Websters Dictionary. If interpreted in the manner advocated by CWIC to incorporate a meaning both different than the common meaning of the word and unstated in the Policy and inconsistent with the nature of appraisal, the Appraisal condition must be deemed ambiguous and must be construed against the draftsman, CWIC.

44. The Colorado Division of Insurance, Department of Regulatory Agencies ("DORA") has issued guidance to the insurance industry and policyholders in its Bulletin B-5.26 entitled "Requirements Related to Disputed Claims Subject to Appraisal" under which Royal Crest's selected appraiser is fully qualified to serve. *See* Exh. E hereto.

45. The rights, status, obligations and other legal relations of Royal Crest may be affected by denial of the right to appraise using a competent and independent appraiser of its choice, at its expense. Royal Crest therefore seeks and requires this Court's declaration of the parties' rights and duties under the circumstances, with which Royal Crest will fully comply following the Court's guidance.

46. Pursuant to C.R.C.P. 57, Royal Crest respectfully requests a declaratory judgment from this Honorable Court as follows:

   (a) That the Policy's Appraisal provision drafted by CWIC authorizes Royal Crest to appoint a "competent and independent" appraiser;

   (b) That the Policy's Appraisal provision drafted by CWIC authorizes Royal Crest to name an appraiser who complies with the disclosure standards set forth by DORA in its Bulletin B-5.26 and is "independent" as that term is appropriately defined;

   (c) That Mr. Keys meets the standard of being an "independent" appraiser under the policy;

   (d) That under the circumstances of this case, CWIC's position misinterprets the Appraisal condition and constitutes a misrepresentation of the policy provisions relating to the pertinent coverage at issue.

**EXHIBIT A**

WHEREFORE, Plaintiff Royal Crest respectfully requests:

(a) that the Court make the foregoing declarations of the parties' respective rights and obligations under the Policy; and

(b) that the Court enter its declaratory judgment and award Royal Crest its costs, attorneys' fees pursuant to pursuant to applicable law, and such other relief as the Court deems appropriate.

(c) Grant Royal Crest such other and further relief as this Court may deem proper.

Dated this 17th day of March, 2017.

                Respectfully submitted,

                By: s/ *Christopher N. Mammel*
                Christopher N. Mammel, Esq.
                #10980
                Merlin Law Group, P.A.
                999 18th Street, Ste. 3000
                Denver, CO 80202
                Phone: (303) 357-2374
                Facsimile: (303) 357-2377
                E-mail:
                cmammel@merlinlawgroup.com

                and

                Jo Anne M. Zboyan, Esq. #14372
                Springer & Steinberg, PC
                Of Counsel
                1600 Broadway, Suite 1200
                Denver, CO 80202
                Phone: (303) 861-2800
                Facsimile: (303) 832-7116
                jzboyan@springersteinberg.com

**EXHIBIT A**