**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Raymond P. Moore**

Civil Action No. 17-cv-00949-RM-KLM

ROYAL CREST DAIRY, INC.,

      Plaintiff,

v.

CONTINENTAL WESTERN INSURANCE COMPANY, a corporation,

      Defendant.

---

## ORDER

---

      This matter is before the Court on several pending motions. First, Defendant and Counter Claimant Continental Western Insurance Company ("CWIC") filed a Motion for Summary Judgment seeking summary judgment on all claims of Plaintiff and Counter Defendant Royal Crest Dairy, Inc. ("Royal Crest") or, in the alternative, summary judgment on Royal Crest's claims to the extent that those claims are based on CWIC's alleged wrongful termination of the appraisal process. (ECF No. 145.) CWIC also filed a Motion to Exclude Expert Testimony of Gregg Gerganoff Pursuant to Fed. R. Evid. 702 (ECF 140), and a Motion for Determination of Question of Law that the Policy Language Provides No Coverage for Compliance with Denver's Green Building Ordinance (ECF No. 168). Royal Crest filed a Motion to Strike Defendant's Motion for Determination of Question of Law that the Policy Language Provides no Coverage for Compliance with Denver's Green Building Ordinance and, in the Alternative, Motion for Extension of Time to Respond. (ECF No. 169.) The Parties filed Responses to each of the

Motions (ECF Nos. 144, 161, 178, 179) and Replies (ECF Nos. 149, 165, 181, 182) and all the Motions are now ripe for determination.

## I.      BACKGROUND

As so many cases do in this jurisdiction, the events leading to this litigation began with a hailstorm.  (ECF No. 166.)  Specifically, a storm on June 24, 2015, which Royal Crest asserts did substantial damage to the buildings that make up its headquarters.  At the time of the storm, Royal Crest was covered by a Commercial Business Insurance Policy from CWIC, and that policy agreed to cover direct physical loss or damage to the insured premises due to, among other things, wind and hail.  Royal Crest provided timely notice of its loss and hired a public adjuster, Derick O'Driscoll of Impact Claim Services LLC ("Impact Claim").  O'Driscoll submitted a claim on behalf of Royal Crest and CWIC investigated.  CWIC informed Royal Crest that following its investigation, it believed that some of the claimed damage may have existed prior to the inception of the insurance policy, and it was continuing to investigate.  Royal Crest submitted a Proof of Loss that asserted damages from the storm in the minimum amount of $1,125,861.35.  (ECF No. 65.)  CWIC ultimately issued a check to Royal Crest for $76,371.37, more than $1 million less than Royal Crest was claiming.  The Parties were ultimately unable to come to an agreement on the value of the loss, and Royal Crest invoked the policy's "appraisal provision."  (ECF No. 166.)  In connection with that appraisal, Royal Crest retained George Keys, of Keys Claim Consultants Inc., to serve as its appraiser.

The appraisal provision of the insurance policy provided that, if the two parties could not agree "on the amount of the loss or the value of the covered property," then,

Either party may demand that these amounts be determined by appraisal.

If either makes a written demand for appraisal, each will select a competent, independent appraiser, and notify the other of the appraiser's identity within 20

days of receipt of the written demand.  The two appraisers will then select a competent, impartial umpire.  If the two appraisers are unable to agree upon an umpire within 15 days, [either party] can ask a judge of a court of record in the state where the property is located to select an umpire.

The appraisers will then determine and state separately the amount of each loss.

The appraisers will also determine the value of the covered property items at the time of the loss, if requested.

If the appraisers submit a written report of any agreement to [CWIC], the amount agreed upon will be the amount of the loss.  If the appraisers fail to agree within a reasonable time, they will submit only their differences to the umpire.  Written agreement so itemized and signed by any two of these three sets the amount of the loss.

(ECF No.146-1.)

Almost immediately after Royal Crest identified Keys as its appraiser, CWIC raised concerns regarding his independence and competence.  (ECF No. 166.)  Keys sent his disclosures, required by the Colorado Department of Regulatory Agencies, Division of Insurance ("DORA"), to CWIC's named appraiser.  (ECF No. 146-12.)  Among other things, Keys' disclosure stated that he had no financial interest in the outcome of the appraisal, and that he charged by the hour for his services, plus expenses.  He disclosed that he had been appointed to serve as an appraiser in approximately 13 cases in which Impact Claim was the public adjuster, stated that he had no direct interest in the amounts determined by the appraisal process, because no part of his compensation related to the amounts determined by that process, and recognized the obligation to supplement his disclosures as needed pursuant to the DORA guidelines.

CWIC informed Royal Crest that it objected to the use of Keys as the appraiser, noting that he had previously been disqualified as an appraiser in numerous cases due to his perceived lack of impartiality.  (ECF No. 166.)  A few months later, Royal Crest filed suit in state court, seeking a declaratory judgment that Keys met the standard under the policy.  (ECF No. 5.)  CWIC

removed the action to this Court (ECF No. 1) and later filed an Answer and Counterclaim, seeking a determination that it owed no additional benefits under the policy (ECF No. 7). Royal Crest filed an Amended Complaint, adding a request that the Court enforce the appraisal process, a claim for breach of contract, a claim for unreasonable delay or denial of a benefit in violation of Colorado Revised Statutes sections 10-3-1115 and -1116, and common law bad faith. (ECF No. 27.) Subsequently, CWIC also filed a Motion to Disqualify Keys from acting as Royal Crest's appraiser, (ECF No. 30), and filed a Motion to Stay Pending Completion of Appraisal Proceedings, (ECF No. 33). The Court granted the stay. (ECF No. 36.) This Court referred the Motion to Disqualify to the Magistrate Judge who issued a Recommendation that CWIC's Motion be denied. (ECF No. 50.)

Magistrate Judge Mix considered CWIC's arguments that Keys was not a "competent, independent" appraiser because of (1) his longstanding business relationship with Royal Crest's attorneys, Merlin Law Group ("Merlin") and with Impact Claim; (2) his alleged "unabashed bias towards policy holders"; and (3) his failure to disclose information that was relevant to his qualifications, including to issues of bias and partiality. In her Recommendation, Magistrate Judge Mix noted that the policy language in this case required an appraiser to be competent and *independent*, but that those terms were undefined. She then noted that CWIC relied largely on authority interpreting policies that required an appraiser to be competent and *impartial*. She concluded that the words "impartial" and "independent" had different meanings, and that, pursuant to its plain meaning, Keys would qualify as "independent" if he was not under the control of Royal Crest, associated with Royal Crest, or dependent on Royal Crest. Magistrate Judge Mix concluded that CWIC had failed to present evidence that Keys was under the control of, affiliated with, or otherwise dependent on Royal Crest. She also cited an opinion of the

Colorado Court of Appeals (which has since been overruled in pertinent part) that concluded that policies like this one "plainly contemplate[] that the appraisers will put forth a value on behalf of the party that selects them." *Owners Ins. Co. v. Dakota Station II Condo. Ass'n, Inc.*, 444 P.3d 784, 789 (Colo. App. 017) *affirmed in part, reversed in part by Owners Ins. Co. v. Dakota Station II Condo. Ass'n, Inc.*, 443 P.3d 47, 54 (Colo. 2019). Magistrate Judge Mix also concluded that CWIC had failed to demonstrate that Keys had not made all the disclosures required under the DORA regulations, noting that there was no authority for the proposition that he was required to disclose prior disqualifications. Magistrate Judge Mix issued her Recommendation on December 18, 2017, and neither Party objected so this Court adopted the recommendation on January 8, 2018. (ECF No. 52.)

Magistrate Judge Mix then also denied a Motion from CWIC to Establish Protocols for Appraisal Proceeding (ECF No. 38), concluding that the requested protocols were "either redundant of existing obligations recognized by the parties or constitute[d] an improper attempt to re-write the parties' contract," (ECF No. 53). She further ordered the Parties to file a Joint Status Report within 10 days of the completion of the appraisal process.

While this case was making its way through the Court, Keys was the subject of litigation in another case before the Court, *Copper Oaks Master Home Owners Ass'n v. American Family Mut. Ins. Co.*, No. 15-cv-01828-MSK-MJW. On July 23, 2018, Chief Judge Krieger issued an Order vacating an appraisal award on which Keys had worked and disqualifying him. *Copper Oaks*, 2018 WL 3536324, *18, No. 15-cv-01828-MSK-MJW (D. Colo. Jul. 23, 2018). In her lengthy Order, Chief Judge Krieger evaluated Keys in light of the standard set forth in that insurance policy, which was "competent and impartial" as well as in light of the DORA standard, which was "competent and fair" and to which she concluded Keys had agreed to be bound. *Id.* at

**3, 9.  As pertinent here, she concluded that Keys failed to meet either standard.  *Id.* at *12.

Specifically, she concluded that DORA required "fairly broad" disclosures—"disclosure of 'facts

that a reasonable person might believe important' if they bear on whether Mr. Keys had 'a

material interest' in the appraisal award."  *Id.* (quoting Colorado Department of Regulatory

Affairs, Division of Insurance Bulletin B-5.26 (2015) ("DORA Bulletin")).  She noted that under

the DORA Bulletin Keys had been required to, but did not, disclose (1) his original agreement

with the insured to be paid on a contingent fee basis; (2) his referral relationship with the public

adjustor in that case, (who also happened to be O'Driscoll, the public adjustor in this case); (3) his

relationships with O'Driscoll and Christopher Mammel, an attorney with Merlin (who is also the

attorney in this case); and (4) Keys' long friendship and association with both Mammel and his

law firm, Merlin.  *Id.*  Each of these facts, she found, were facts "that a reasonable person would

consider important in evaluating Mr. Keys' own interest in an appraisal award."  *Id.*  Chief Judge

Krieger concluded that Keys' failure to make such disclosures "prevented him from being

'competent and fair' under the DORA Bulletin."  *Id.* at *13.

Barely more than two weeks later, whether in reaction to the *Copper Oaks* Order or

simply in order to expedite the appraisal process, Royal Crest withdrew Keys and appointed a

new appraiser, Juan Cartaya of Cartaya Insurance Appraisers, Inc.  (ECF No. 166.)  After Royal

Crest named Cartaya, however, the CWIC appraiser sought to withdraw from the agreement he

had reached with Keys regarding the naming of a neutral umpire.  CWIC then notified Royal

Crest on October 15, 2018, that it was terminating the appraisal.  CWIC indicated that it was

terminating the appraisal because, in its view, Cartaya was not an impartial appraiser.  (ECF No.

146-29.)  CWIC cited Cartaya's "long-term relationship with the Merlin Law Group," and pointed

to a case from the Middle District of Florida in which the Court found that Cartaya was not

impartial.  (Id., citing *Nalcrest Found., Inc. v. Landmark Am. Ins. Co.*, No. 8:18-CV-996-T-24AAS, 2018 WL 4293147, at *6 (M.D. Fla. July 27, 2018).)  CWIC stated that Royal Crest had caused "unjustified delay" through its "obstinate refusal to replace Mr. Keys and its subsequent refusal to appoint a competent, independent, fair and impartial appraisal."  (ECF No. 146-29.) They also informed Royal Crest that they viewed its conduct as a "breach of its duty to cooperate," a "breach of the covenant of good faith and fair dealing," a "breach of its duty to appoint a competent and impartial appraiser," and a "breach of its duty to fully comply with all of the terms of the [p]olicy."

The Parties then requested that the Court lift the stay and that they be permitted to reframe and supplement their pleadings.  (ECF No. 62.)  Royal Crest filed a Second Amended Complaint (ECF No. 65) and CWIC filed a new Answer and Counterclaim (ECF No. 69).  The Parties later filed the present Motions.

## II.   LEGAL STANDARDS

### A.  Summary Judgment

Summary judgment is appropriate only if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Gutteridge v. Oklahoma*, 878 F.3d 1233, 1238 (10th Cir. 2018).  Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury or is so one-sided that one party must prevail as a matter of law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986); *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1136 (10th Cir. 2000); *Carey v. United States Postal Serv.*, 812 F.2d 621, 623 (10th Cir. 1987).  Once the moving party meets its initial burden of demonstrating an absence of a genuine dispute of material fact, the burden then shifts

to the nonmoving party to demonstrate the existence of a genuine dispute of material fact to be resolved at trial.  *See 1-800-Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229, 1242 (10th Cir. 2013) (citation omitted).  Statements or arguments of counsel are not evidence sufficient to defeat summary judgment.  *See In re EuroGas, Inc.*, No. 17-4197, 2019 WL 103891, at *6 (10th Cir. Jan. 4, 2019) (statements by counsel are not evidence).  Similarly unavailing are bald assertions in briefs that there are genuine issues of material fact.  *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 679 (10th Cir. 1998) (citations omitted).  "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citation omitted).  The facts, however, must be considered in the light most favorable to the nonmoving party.  *Cillo v. City of Greenwood Vill.*, 739 F.3d 451, 461 (10th Cir. 2013) (citations omitted).  Therefore, the right to trial is favored.  *See Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002).

"If the movant has the burden of proof on a claim or defense," then "the movant must establish every element of its claim or defense by sufficient, competent evidence.  Once the moving party has met its burden, to avoid summary judgment the responding party must present sufficient, competent, contradictory evidence to establish a genuine factual dispute."  *Copper Oaks Master Home Owners Ass'n v. Am. Fam. Mut. Ins. Co.*, 416 F. Supp. 3d 1115, 1121–22 (D. Colo. 2019), opinion clarified, No. 15-CV-01828-MSK-SKC, 2019 WL 5310253 (D. Colo. Oct. 18, 2019) (citations omitted).  "If the moving party does not have the burden of proof at trial, it must point to an absence of sufficient evidence to establish the claim or defense that the non-movant is obligated to prove."  *Id.* at 1122.  "If the respondent comes forward with sufficient competent evidence to establish a prima facie claim or defense, a trial is required.  If the

respondent fails to produce sufficient competent evidence to establish its claim or defense, then the movant is entitled to judgment as a matter of law." *Id.*

### B. Fed. R. Evid. 702

Rule 702 of the Federal Rules of Evidence ("Rule 702") governs the admission of expert evidence in federal court. Fed. R. Evid. 702; *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999). Rule 702 provides as follows:

> A witness who is qualified as an expert by knowledge, skill, experience, training or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

To evaluate admissibility, the court follows three steps. First, the court must decide "whether the proffered expert is qualified 'by knowledge, skill, experience, training, or education' to render an opinion." *Bill Barrett Corp. v. YMC Royalty Co., LP*, 918 F.3d 760, 770 (10th Cir. 2019) (quoting Rule 702). Next, if the expert is sufficiently qualified, the court must determine whether the expert's opinion is reliable. *Id.* Finally, after reliability, the court evaluates whether the testimony is relevant. *See* Fed. R. Evid. 402. The trial court has discretion to determine "*how* to perform its gatekeeping function under *Daubert*." *Bill Barrett Corp.*, 918 F.3d at 770 (emphasis in original). A *Daubert* hearing is not mandated. *Id.* The proponent of expert evidence bears the burden of establishing its admissibility. *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 970 n.4 (10th Cir. 2001).

### C.  Motion for Determination of Law and Motion to Strike

Under Fed. R. Civ. P. 7(b)(1)(B), all requests for a court order must "state with particularity the grounds for seeking the order."  Similarly, under the Civil Local Rules in this District, "a motion involving a contested issue of law shall state under which rule or statute is filed and be supported by a recitation of legal authority in the motion."  D.C.COLO.LCivR 7.1.

CWIC asks the Court to make what it characterizes as a ruling on a purely legal question. (ECF No. 178.)  It cites no rule, however, under which it asks the Court to do so.  (ECF Nos. 168, 178.)  Royal Crest argues that it is, in fact, either an untimely Motion for Partial Summary Judgment brought pursuant to Fed. R. Civ. P. 56, (ECF Nos. 169), or perhaps a request for declaratory judgment on the interpretation of the policy's provisions (ECF No. 179).  Other Courts in this district have construed similar motions to be motions for partial summary judgment. *See, e.g. Horn v. CSAA General Ins. Co.*, 642 F.Supp.3d 1267, 1268 n.1 (D. Colo. 2022) (noting that the party in that case had filed a Motion for Determination of Law under Fed. R. Civ. P. 50(a)(2) (a motion for judgment as a matter of law), but that such motions could only be filed after the party has been heard on the issue during a jury trial, and that the Court would therefore construe the motion as one for partial summary judgment); *Rabin v. Fid. Nat. Prop. & Cas. Ins. Co.*, 863 F. Supp. 2d 1107, 1110 (D. Colo. 2012) (construing two motions for determination of question of law as motions for summary judgment).  Such matters are easily resolved in cases in which there is no genuine dispute of material fact, and the matter can be determined strictly as a question of law.  *See Horn*, 642 F.Supp.3d at 1271 (noting that the parties agreed there was no genuine dispute of material fact).  Similarly, in such a case it might be less essential for the parties to comply with this Court's Civil Practice Standards, §IV.C.

When a motion fails to comply with any of the above rules, the Court retains the discretion to deny the motion, in whole or in part.  Civil Practice Standards §IV.G.  Royal Crest has essentially asked the Court to do so, requesting that CWIC's Motion be stricken.  (ECF No. 169.)  The Court concludes that it will address CWIC's Motion on the merits in this instance but warns counsel that in the future, noncomplying motions may be summarily denied.  The Court concludes, therefore, that Royal Crest's Motion to Strike (ECF No.169) is DENIED IN PART insofar as it asks the Court not to consider CWIC's Motion.  It is also DENIED AS MOOT IN PART in its alternative request for additional time to respond to CWIC's Motion.

## III.   ANALYSIS

### A.  Motion for Summary Judgment

In its Motion for Summary Judgment, CWIC asks this Court to grant summary judgment on all of Royal Crest's claims, as well as on CWIC's eighth affirmative defense, that Royal Crest's claims are barred by its failure to comply with the terms of the policy, and its ninth affirmative defense, that Royal Crest failed to satisfy conditions precedent to recovery under the policy because, it argues, Royal Crest's coverage has been "vitiated" by "various breaches of the policy."  (ECF No. 145.)  In the alternative, it asks for summary judgment on Royal Crest's second claim, for breach of contract; fourth claim, for unreasonable delay in violation of C.R.S. §§ 10-3-1115 and -1116; and fifth claim, for common law bad faith, to the extent that each of those three claims are based on CWIC's alleged wrongful termination of the appraisal and summary judgment in favor of CWIC's third claim, for breach of contract.

Specifically, CWIC argues first that Royal Crest violated the terms of the insurance policy because its appraisers allegedly concealed material facts about their interests in the appraisal.  It asserts that Royal Crest's agents, O'Driscoll and Mammel were both aware of the

misrepresentations, but failed to cure them, and that their failure to do so, under the terms of the policy, constituted concealment by Royal Crest.  CWIC next asserts that neither Keys nor Cartaya satisfied the policies for appraisers, that they be competent and independent—CWIC argues that neither was independent because of their "brazen advocacy" for policyholders.  CWIC also notes that the Court in *Copper Oaks* "questioned whether an appraiser whose partiality and material interest in inflating the outcome of the appraisal award could be considered competent," but does not make any additional argument that either Keys or Cartaya were not competent in this case. CWIC then argues that both the failures to disclose and the appointment of unqualified appraisers constituted material breach of the policy and that therefore coverage was vitiated.

Royal Crest responds first that Magistrate Judge Mix's Recommendation on the Motion to Disqualify Keys, and this Court's adoption thereof, is law of the case, and that the decision already resolved the question of the qualifications required of an appraiser pursuant to the insurance policy.  (ECF No. 161.)  Royal Crest continues by arguing that CWIC has not presented any new evidence that would support a different conclusion regarding Mr. Keys' competency and independence as those terms were interpreted in the prior Recommendation and Order.  It contends that the Magistrate Judge previously concluded that the DORA Bulletin did not require Keys to disclose more information than he did and that there is no legal authority that would support a reconsideration of this conclusion.  Royal Crest also asserts there is a disputed issue of material fact regarding who violated the terms of the policy first, thereby excusing the other party's duty to perform its duties under the policy.  And it argues that CWIC has failed to supply any evidence that would permit this Court to conclude that it, as the named insured, intentionally concealed or misrepresented a material fact or otherwise committed fraud.  For those reasons, it asks that this Court deny CWIC's Motion for Summary Judgment.

In the Court's view, it makes the most sense to evaluate the appointments of Keys and Cartaya separately, as there are significant differences between the two factually, and because their appointments must be considered under slightly different legal landscapes.

1. *Mr. Keys*

In the Court's view, the question of Keys' qualifications has been fully addressed and resolved in the *Copper Oaks* case. 2018 WL 3536324, *18. The Court is persuaded by Chief Judge Krieger's reasoning and application of that reasoning to Keys, insofar as she concluded that Keys violated the DORA Bulletin by failing to disclose his very significant relationships with O'Driscoll, Mammel, and Merlin. *Id.* at *12. The Court further concludes that Keys' relationships themselves with O'Driscoll, Mammel, and Merlin likely render him not fair under the DORA Bulletin. The DORA Bulletin defines what it means to be a "fair and competent" appraiser under its terms. An appraiser can be considered "fair and competent" if he or she (1) is not a party to the insurance policy; (2) has no financial interest in the outcome of the appraisal; (3) is not employed by the insurer or the policyholder; and (4) is not a family member of the insured and does not have a personal relationship with the insured that would reasonably suggest bias. DORA Bulletin B-5.26 (2015). Keys has worked with Merlin on behalf of policyholders in at least 65 cases, stretching back to cases that were initiated in the late 1990's. (ECF No. 146-20.) He has also worked with O'Driscoll on around 29 cases. (ECF No. 146-21.) Keys also has a very long-standing relationship with members of Merlin—Merlin lawyers assisted Keys with the legal formation of his adjusting company and Keys co-founded, with Chip Merlin (the founder of Merlin), the Florida Association of Public Insurance Adjusters. (ECF No. 166.) But the Court need not resolve that question. Keys' failure to comply with the DORA Bulletin alone would have sufficed to disqualify him as an appraiser in this case. *See Copper Oaks* at * 13 (concluding

that Keys' failure to make certain disclosures as required under the DORA Bulletin rendered him not competent and fair, and therefore was sufficient to disqualify him as an appraiser).  The Court disagrees with Royal Crest that a different conclusion is mandated as law of the case here.  In order to constitute law of the case, among other things the court's prior determination must have resulted in a final determination—reduced to a final judgment and necessary to the entry of that judgment. *Frandsen v. Westinghouse Corp.*, 46 F.3d 975, 978 (10th Cir. 1995).  No final judgment has been issued in this case.

The Court's analysis does not end there, however.  As Chief Judge Krieger concluded in a different order in the *Copper Oaks* case, while an insurer may argue that "simply because [the insured] tendered an appraiser who was later found to be impartial, [the insured] materially breached the Appraisal Clause," there remains a question of whether a party's state of mind is relevant to a finding of a breach—"e.g. whether the selection of a partial appraiser must be intentional, reckless, or negligent for the Appraisal Clause to be breached, or perhaps even whether breach of the Appraisal Clause is an issue of strict liability for the party selecting a partial appraiser." *Copper Oaks Master Home Owners Ass'n v. American Family Mut. Ins. Co.*, 416 F.Supp.3d 1115, 1124 n.4 (D. Colo., 2019).  The Court cannot conclude at this time that such a breach is an issue of strict liability and CWIC has presented no authority for such a proposition. It is easy to conceive of a case in which the party and its agents choose, in good faith, someone they believe to be an appraiser qualified under the insurance policy and the DORA Bulletin, only later to discover that he or she fails to meet the requirements in significant way.  Has such a party violated the terms of the insurance policy?  It seems to the Court that more is required.

In this case, the Court cannot conclude as a matter of law that Royal Crest breached the terms of the insurance policy when it initially appointed Keys.  The evidence presented could

support a reasonable factfinder's conclusion that Royal Crest believed that Keys was qualified, given the language of the policy itself, which requires a competent and *independent* appraiser, as opposed to an *impartial* appraiser, and given that the prior caselaw analyzing Keys' appointments addressed policies that used the term "impartial" instead.  (ECF No. 146-1.)  A letter sent by O'Driscoll to CWIC could reasonably support the conclusion that Royal Crest believed that distinction was critical.  (ECF No. 146-8.)  And, in fact, that belief seemed to be well-founded following the recommendation of Magistrate Judge Mix on CWIC's Motion to Disqualify Keys. In fact, she concluded that CWIC had failed to demonstrate that Keys was not competent or not independent.  Furthermore, CWIC points the Court to no authority or evidence for the proposition that it was clear, prior to the *Copper Oaks* opinion, that Keys had failed to make proper disclosures pursuant to the DORA Bulletin, or that a failure to satisfy the DORA Bulletin's requirements would properly disqualify an appraiser.  Only following that Order was Royal Crest on notice that Keys was required to make much more extensive disclosures under the DORA Bulletin, and that his failure to do so was disqualifying.  And Royal Crest almost immediately withdrew Keys as its appraiser.  The Court cannot conclude, therefore, that a reasonable juror could only conclude that Royal Crest violated the terms of the insurance policy by appointing Keys.

### 2.  Mr. Cartaya

CWIC also argues that the appointment of Cartaya violated Royal Crest's duty, under the insurance policy, to appoint a competent and independent appraiser.  One authority upon which CWIC relies is the 2021 Order now-Senior Judge Krieger granting summary judgment on the basis that Cartaya was not an impartial appraiser.  *GSL Group, Inc. v. Travelers Indemnity Co.*, No. 18-cv-00746-MSK-SKC, 2021 WL 4245372, *7 (D. Colo. Sept. 16, 2021).  That case,

however, turned on the term "impartial" as it was used in the insurance policy, and addressed neither the question of "independence" nor the standards created by the DORA Bulletin.  In any event, Royal Crest appointed Cartaya in 2018 and CWIC terminated the appraisal process a few months later, both events happening several years before the *GSL Group* opinion was issued.

Furthermore, although Cartaya does have a history of working with both Merlin and O'Driscoll, his relationship with them is not one of the same magnitude as Keys'.  For example, while Keys had worked with Merlin attorneys and clients on at least 65 occasions spanning a period of over 20 years, Cartaya had worked with Merlin attorneys on 16 cases prior to his appointment in this case and has since been appointed as an appraiser in only 11 more.  He has apparently only worked with O'Driscoll on 6 cases.  (ECF No. 166.)  Unlike Keys, Cartaya has no personal relationships with any of Royal Crest's other representatives, and unlike Keys, Cartaya appears to have much more limited involvement in pro-policyholder advocacy.  Finally, Cartaya has, and continues, to work for *both* policyholders *and* insurance companies.  (ECF Nos. 162-7, 166-34.)  The fact that a particular attorney, law firm, or insurance adjuster frequently recommends a specific appraiser to their clients is not, by itself, enough to demonstrate that the appraiser cannot meet the requirements of the DORA Bulletin or that he or she is not independent under the policy at issue here.  Certainly, the Court cannot conclude as a matter of law that Royal Crest or its agents had the requisite state of mind to violate the appraisal provision of the policy.

Because the Court concludes that genuine issues of material facts remain as to whether Royal Crest and/or its agents violated the terms of the insurance policy when they appointed Keys and Cartaya, a trial is appropriate in this matter.  CWIC's Motion for Summary Judgment is therefore DENIED.

**B.  Motion to Exclude Expert Testimony of Greg Gerganoff**

CWIC next moves pursuant to Fed. R. Evid. 702 to exclude the expert testimony of Greg Gerganoff.  (ECF No. 140.)  Gerganoff is being offered by Royal Crest as an expert in construction safety.  (ECF No. 144.)  He prepared a report in which he opines about the particular safety precautions he believes should be taken during the repair of the Royal Crest property. Specifically, O'Driscoll told him the scope of the anticipated work, Gerganoff toured the facility, and then, in light of his knowledge of Occupational Safety and Health Act ("OSHA") regulations, he opined on the particular measures that he believes should be used in this case.  CWIC argues that the resulting opinions are (1) "not based on a complete set of facts or data" and therefore speculative; (2) based on unreliable methodology; (3) cannot be reliably applied to the facts of this case; and (4) constitute unqualified legal conclusions.  (ECF No. 140.)  CWIC also asserts that Gerganoff's opinions are unnecessary and risk confusing the jury.

Royal Crest responds that Gerganoff's opinions are (1) not speculative but rather based on his long experience in construction operations and training in safety standards, combined with his inspection of the site and the scope of anticipated repairs; (2) based on a sound methodology involving a site visit, communication with O'Driscoll, and his knowledge of safety standards; and (3) helpful to jurors who are unlikely to have knowledge of, or expertise regarding, safety standards in the construction industry.

At the first step of the 702 analysis, the Court concludes that Gerganoff's specialized knowledge will help the trier of fact to understand certain evidence in this case.  CWIC has made no argument that Gerganoff is not an expert in construction safety, and it would have been hard to prevail had it done so.  He worked as an Environmental Health and Safety Manager for almost 20 years before he opened a business as a safety consultant.  He has made safety recommendations to

companies doing construction work on how to either avoid or remediate hazards.  And he has
testified as an expert witness with regard to safety standards in personal injury negligence cases.
(ECF No. 140-1.)  The Court also believes that jurors are unlikely to have experience with the
types of safety precautions that should generally be utilized on major construction projects such as
the one contemplated by Royal Crest in this case.

The second question is somewhat closer—is Gerganoff's opinion reliable?  Is it based on
sufficient facts and data, and reliable principles and methods?  Again, the Court ultimately
concludes that it is.  Gerganoff was informed by O'Driscoll that this project would involve
roofing work, including the demolition of old roofs and the construction of new roofs.  He was
also informed that it would include some work on HVAC units.  It was based on that scope of
work that he seems to have drafted his opinion.  With knowledge of that anticipated scope, he
walked through the Royal Crest property and evaluated such conditions as the presence of
overhead electrical power lines as well as issues such as access to the property during construction
by construction crews, Royal Crest personnel, business visitors, the general public, and
emergency responders.  With his knowledge of the OSHA rules, the layout of the property, and
the scope of work, he was able to anticipate likely hazards that would need to be addressed.  For
example, he anticipated the presence of falling material from the roof demolition, and the need to
both protect passers-by from such debris and to remove it from the site.  He also concluded that
the work was likely to involve construction equipment—both heavy equipment such as forklifts,
and smaller hand tools, and discussed the need to safely use and store that equipment.  While the
parties are not in agreement regarding the scope of work to be completed, the Court concludes
that CWIC can pursue that issue in cross-examination.  CWIC also points out that Gerganoff only
visited the site once, and that he did not take measurements in order to make more precise

recommendations.  Again, the Court concludes that such issues are ripe for cross-examination. They go to the weight, and not the admissibility, of Gerganoff's testimony.

On the question of relevance, the Court concludes that it is premature to decide that question.  Gerganoff's opinion does not discuss the cost of adding his recommended safety measures to the construction plans for this project, nor does he opine about who—the client or the contractor—would bear such a cost.  It is apparent, however, that the reason Royal Crest seeks to admit his opinions is in order to show that the price to repair its property will be higher than that calculated by CWIC.  Standing alone, Gerganoff's opinions might not be relevant to any material issue in this case.  But if Royal Crest can offer another expert who can opine on the costs of these measures, it would be relevant to the ultimate question of damages.

With regard to CWIC's assertion that Gerganoff's testimony is merely legal opinion, the Court notes that "a witness may refer to the law in expressing an opinion without that reference rendering the testimony inadmissible.  Indeed, a witness may properly be called upon to aid the jury in understanding the facts in evidence even though reference to those facts is couched in legal terms." *Specht v. Jensen*, 853 F.2d 805, 809 (10th Cir. 1988).  "[A]n expert's testimony is proper under Rule 702 if the expert does not attempt to define the legal parameters within which the jury must exercise its fact-finding function." *Id.* at 809-10.  "However, when the purpose of testimony is to direct the jury's understanding of the legal standards upon which their verdict must be based, the testimony cannot be allowed.  In no instance can a witness be permitted to define the law of the case." *Id.* at 810.  That said, this is not a case about OSHA standards.  The Court cautions the Parties that they should avoid confusing the jury or wasting time by creating a trial-within-a-trial.

For all of these reasons, CWIC's Motion to Exclude Expert Testimony of Greg Gerganoff Pursuant to Fed. R. Evid. 702 (ECF No. 140) is DENIED.

**C.  Motion for Determination of Question of Law**

As discussed above in the Legal Standards subsection, CWIC has filed a motion that it frames as a request for a determination of a question of law.  Having reviewed the Motion, the Response, and the Reply, the Court will construe the Motion as one for partial summary judgment.

CWIC asks this Court to rule, as a matter of law, that Royal Crest is precluded from seeking damages based on the alleged increased repair costs necessitated by the Denver Green Building Ordinance or any other building code/ordinance that was not in force on the date of the loss and precluded from seeking damages based on insurance benefits under the Ordinance Coverage provision.

The Court will begin with the language of the policy itself.  In what is termed "Supplemental Coverage for Ordinance of Law (Increased Cost to Repair and Cost to Demolish and Clear Site," ("Ordinance Coverage"), that provision reads, in pertinent part:

> Ordinance or Law (Increased Cost to Repair and Cost to Demolish and Clear Site)—
>
> a.      Increased Cost to Repair—When a covered peril occurs to a covered building or structure, [CWIC] cover[s] the:
>
> > 1)  increased cost to repair, rebuild, or reconstruct damaged portions of a covered building or structure; and
> >
> > 2)  increased cost to repair, rebuild, or reconstruct undamaged portions of a covered building or structure whether or not those undamaged portions need to be demolished;
>
> as a result of the enforcement of building, zoning, or land use ordinance, law, or decree and [sic] is in force at the time when a covered peril occurs to a covered building or structure.
>
> . . .

[CWIC] do[es] not cover the increased cost of construction until the covered building or structure is actually repaired or replaced and unless the repairs or replacement are made as soon as reasonably possible after the loss, not to exceed two years.

(ECF No. 168-1.)

The policy also excludes coverage for certain costs, stating "[e]xcept as provided under Supplemental Coverages – Ordinance or Law, [CWIC] do[es] not pay for loss or increased cost caused by enforcement of any code, ordinance, or law regulating the use, construction, or repair of any building or structure."  (Id.)  The provision further specifies that CWIC will not pay for loss caused by the insured's increased costs incurred because of its "compliance with a code, ordinance, or law during the construction, repair, rehabilitation, remodeling, or razing of a building or structure."  (Id.)

CWIC presents a seemingly very clean argument.  It correctly points out that the loss in this case took place on June 24, 2015.  It also correctly points out that the Denver Green Building Ordinance went into effect on November 2, 2018.  It points out, therefore, that the Ordinance at issue was not in effect at the time of the loss, and therefore it is not covered under the terms of the policy.  It also points out that Royal Crest has apparently still not completed the repairs to its facilities and therefore it failed to make the required repairs within the two-year time limit prescribed by the policy.

Royal Crest responds with a number of arguments, several of which the Court finds unpersuasive.  One argument, however, appears to carry the day.  Specifically, Royal Crest points the court to the so-called "prevention doctrine."  If one party prevents the other party from fulfilling a condition of the contract, the condition may be waived or excused.  *American Ins. Co. v. Pine Terrace Homeowners Ass'n*¸ No. 20-cv-00654-DDD-MDB, 2023 WL 6796163, at *5 (D. Colo. June 12, 2023) (recognizing the "prevention doctrine").  Thus, if CWIC, through its

conduct, prevented Royal Crest from completing the repairs before the two-year limit expired, it cannot then rely on that two-year deadline in order to deny coverage under this provision. *Gateway Townhomes Ass'n, Inc., v. Travelers Indem. Co.*, No. 15-cv-00395-RBJ, 2016 WL 4092691, at *7 (D. Colo. June 14, 2016). Similarly, if, through wrongful conduct of its own, CWIC prevented Royal Crest from completing its repairs before the Green Ordinance went into effect, the additional cost of complying with that Ordinance would be a proper element of Royal Crest's damages in this case.

The Court cannot say that CWIC's conduct in this case necessarily prevented Royal Crest from completing the necessary repairs, and it notes that Royal Crest would never have been entitled to receive benefits under the policy until after the repairs had been completed. If, however, a factfinder concludes that CWIC did, in fact, owe additional benefits under the policy, and if it also finds that CWIC's refusal to pay those additional amounts prevented Royal Crest from proceeding by, for example, preventing it from obtaining financing for the work, Royal Crest would have an argument that it is entitled to compensation for the increased costs caused by such a wrongful delay. The Court concludes that genuine issues of material fact exist as to both of those questions—or at least that CWIC has failed to show the absence of such issues. Therefore, the Court must DENY CWIC's Motion for Determination of Question of Law that Policy Language Provides no Coverage for Compliance with Denver's Green Building Ordinance. (ECF No. 168.)

## IV.    CONCLUSION

For the reasons set forth above, it is hereby ORDERED:

1) That Defendant and Counter Claimant's Motion for Summary Judgment (ECF No. 145) is **DENIED**;

2)  That Defendant and Counter Claimant's Motion to Exclude Expert Testimony of Greg Gerganoff Pursuant to Fed. R. Evid. 702 (ECF No. 140) is **DENIED**;

3)  That Plaintiff and Counter Defendant's Motion to Strike (ECF No. 169) is **DENIED IN PART** and **DENIED AS MOOT IN PART**; and

4)  Defendant and Counter Claimant's Motion for Determination of Question of Law (ECF No. 168) is **DENIED**.

DATED this 2nd day of February, 2024.

BY THE COURT:

RAYMOND P. MOORE
Senior United States District Judge